UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Petitioner,                         No. C 05-3792 PJH

    v.                                    **ORDER REOPENING CASE AND ENFORCING IRS SUMMONSES; REQUIRING STATUS STATEMENT IN RELATED CASE**

JOHN C. COHAN, aka Christopher Cohan,

        Respondent.

_____/

UNITED STATES OF AMERICA,             No. C 05-3791 PJH

        Petitioner,

    v.

MAX D. GRAY,

        Respondent.

_____/

        The United States' Motion to Reopen the Case and Enforce IRS Summonses came on for hearing before this court on May 16, 2007. Respondent John C. Cohan ("Cohan") appeared through his counsel, Edward M. Robbins. The United States appeared through its counsel, W. Carl Hankla. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS the government's motion for the following reasons and for the reasons stated at the hearing.

**BACKGROUND**

        The IRS is conducting an investigation into Cohan's income tax liability for tax year 1998. The focus of the investigation is on a package of three interrelated tax shelters

Cohan purchased for approximately $14 million in an attempt to avoid income tax and transferee liability on the 1998 sale of his wholly owned cable TV corporation Sonic Enterprises, Inc.'s ("Sonic") assets. The government describes these three transactions as:

(1) a Notice 2000-44 Son of Boss transaction to generate an artificially high basis for Cohan's stock in Sonic, which owned the cable TV assets ( "Foghorn Transaction");

(2) a Notice 2001-45 basis-shifting transaction to further inflate Cohan's basis in Sonic ("Stockton Street Transaction");

(3) a Notice 2001-16 intermediary transaction to transfer Sonic stock to a straw person to evade corporate-level tax upon the sale of Sonic's cable TV assets, increasing Cohan's profits in the sale of his cable TV business ("Midco Transaction").

The government brought related proceedings in this court pursuant to 28 U.S.C. §§ 7402(b) and 7604(a) of the Internal Revenue Code for judicial enforcement of IRS summonses served on Cohan, and IRS summonses served on Cohan's then-attorney, Max D. Gray[1] ("Gray"). The government filed petitions on September 20, 2005, seeking the documents Cohan refused to produce in response to those summonses. Specifically, the government sought 93 documents which, although responsive to the summonses, were withheld by Cohan as subject to attorney-client privilege. The government contended that Cohan waived the privilege by asserting an advice-of-counsel defense.

At the December 7, 2005 hearing on the government's petitions, the court ordered that "upon the assertion of the . . . reliance on advice-of-counsel defense, that Mr. Cohan simultaneously disclose to the United States the documents that have been withheld on the privilege log." At that hearing, Mr. Cohan's counsel stated that "if Mr. Cohan raises [advice-of-counsel defense]," the government would be entitled to the information and would "get the documents."

---

[1] The Gray case was stayed pending Cohan's decision regarding whether to waive attorney-client privilege.

On December 8, 2005, the court issued a written order finding that Cohan established a prima facie case of attorney-client privilege and denying the government's request for an *in camera* review of the withheld documents. The court further found that Cohan had not yet waived the attorney-client privilege by asserting the advice-of-counsel defense, noting:

> Neither party disputes that once the defense is asserted as a basis for relief from penalties, the privilege is waived. Accordingly, once the IRS has issued the expected notice of deficiency and Cohan files a petition with the Tax Court, Cohan shall immediately advise the government whether he will assert such defense, and if so, shall simultaneously produce to the government the 93 withheld documents.

The court also noted that the government could seek to have the case reopened should Cohan fail to comply with the order.

On December 30, 2005, the IRS issued a statutory notice of deficiency to Cohan, which included penalties. He and his wife then filed a petition and an amended Tax Court petition (on May 1, 2006) to contest the tax deficiency and penalties. Cohan conceded that two transactions – the "Foghorn Transaction" and the "Stockton Street Transaction" were invalid for tax purposes, and he asserted an advice-of-counsel defense with regards to those transactions. In his amended petition, Cohan does not mention the Midco Transaction. Cohan claims that the 93 privileged documents relate to the "asset sale" of the actual cable TV business deal rather than the Stockton Street and Foghorn Transactions. Because he is only asserting the advice-of-counsel defense with regards to the latter transactions, he claims he should not have to produce the documents.

The government claims that all of these transactions were designed to avoid tax at the corporate level on capital gain from the asset sale, to avoid ordinary income and/or capital gains at the individual level triggered by distribution of sale proceeds to Cohan, and to avoid transferee liability at the individual level. The government contends that the 93 documents on the privilege log are related to the tax shelter transactions, including the Midco Transaction. The government requests these documents, as well as additional

"Binder 116" documents, identified by the IRS after the court entered its last order, and now seeks to reopen the case and obtain an order enforcing the IRS summonses at issue.

## DISCUSSION

A.   Legal Standard

The IRS may issue a summons only for the purposes set out in 26 U.S.C. § 7602(a). *Crystal v. United States*, 172 F.3d 1141, 1143 (9th Cir. 1999). Those purposes include "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability." 26 U.S.C. §7602(a). To enforce an IRS summons, the government must establish that: (1) the investigation will be conducted for a legitimate purpose; (2) the material being sought is relevant to that purpose; (3) the information sought is not already in the IRS's possession; and (4) the IRS complied with all the administrative steps required by the Internal Revenue Code. *Crystal*, 172 F.3d at 1143-44 (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964)). "The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the *Powell* requirements have been met." *Id.*

Because the court has already found this burden has been met, the burden then shifts to Cohan to show why the summonses should not be enforced. *See Liberty Fin.*, 778 F.2d at 1392. The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1070-71 (9th Cir. 1992). To meet this burden, a party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold. *Id.* On December 8, 2005, this court found that Cohan's privilege log, "which shall be supplemented within one week by a declaration to be prepared by Cohan's counsel in accordance with the court's instructions at the hearing," is sufficient to establish a prima facie case of attorney-client privilege. However, the court found that privilege would be waived if Cohan asserted a reliance on advice-of-counsel defense.

4

B.  The Government's Motion

    1.  The Motion is Timely

Cohan first argues that the government waited too long to seek to reopen the case. The government's motion is timely. The government moves to reopen the case pursuant to the court's December 8, 2005 Order, which stated that the government could seek to reopen the case should Cohan fail to produce the 93 withheld documents when he asserted the advice-of-counsel defense in Tax Court. On May 1, 2006, Cohan asserted that defense. The government filed the instant motion on February 20, 2007. No deadline was set for filing the motion in the court's order, and the government has not waived any of its arguments. This is especially true here, where Cohan's refusal to produce the privileged documents was in violation of the plain language of the court's December 8, 2005 Order. Cohan's attorney represented to the court that he would "cough those [93 privileged] documents right up" should Cohan rely on the advice-of-counsel defense. Cohan never indicated that he would produce a narrower subset of documents if he relied on that defense for certain limited transactions. Yet, despite the fact the court ordered him to produce all 93 documents when he asserted the advice-of-counsel defense, Cohan never sought modification of the court's order when he decided not to comply with it.

    2.  Admissibility of McKenna Declaration

The government submits two declarations from IRS Agent Bernard McKenna ("McKenna") in support of its motion.

Cohan argues that McKenna's declaration is not proper expert testimony, noting that the government has not attempted to qualify McKenna as an expert.[2] IRS agents, however, may give expert opinions. *See United States v. Tarwater*, 308 F.3d 494, 513 (6th Cir. 2002); *see also United States v. Wade*, 203 Fed. Appx. 920, 930 (10th Cir. 2006) ("properly qualified IRS agent may analyze a transaction and give expert testimony about

---

[2] Cohan also argues that the government has not followed disclosure requirements of Federal Rule of Civil Procedure 26 pertaining to experts. Rule 26(a)(1)(E)(v), however, exempts actions to enforce administrative summonses from the initial disclosure requirements.

its tax consequences"). McKenna has a B.S. degree in accounting, a M.S. degree in taxation, and experience as a Revenue Agent for over 26 years, including experience in a tax-shelter examination group and experience as an instructor. He has spent over 1000 hours investigating the Cohan case and looking at the various documents. Cohan has not made any specific objections to McKenna's qualifications. The court finds that McKenna is qualified to give expert opinion.

At the hearing, Cohan requested the opportunity to hire an additional expert to rebut McKenna's opinions. The court allowed Cohan to submit an expert declaration, and he did so on June 5, 2007. The court has considered that declaration, as well as McKenna's declaration, in analyzing whether Cohan has waived the attorney-client privilege, as discussed below.

### 3. Waiver of Privilege

The Ninth Circuit employs a three-pronged test in determining whether the attorney-client privilege has been waived. *See United States v. Amlani*, 169 F.3d 1189, 1995 (9th Cir. 1995). A waiver is effected where (1) a party raises an affirmative defense, (2) that puts in issue communications otherwise privileged, and (3) upholding the privilege would deny the opposing party access to vital facts. *Id.* (upholding finding that appellant waived his attorney-client privilege by asserting a counsel disparagement claim).

Here, as Cohan has conceded, he raised the advice-of-counsel defense and waived attorney-client privilege with respect to the Stockton Street and Foghorn transactions. By including all of the 93 withheld documents on his privilege log, Cohan has already conceded that all of these documents are relevant to the IRS's investigation. Clearly, the two transactions for which Cohan asserted his advice-of-counsel defense are part of the IRS's investigation. Neither Cohan nor his expert refute this assertion by Agent McKenna. While Cohan asks this court to determine the merits of how exactly the tax shelters being investigated are related to one another, the issue is whether Cohan's waiver of privilege is broad enough to encompass all aspects of this particular IRS investigation. Moreover,

Cohan's decision-making process regarding which tax-shelters to choose and how to structure the various transactions is relevant to his advice-of-counsel defense.

Furthermore, apart from the fact that all of the transactions at issue are part of the IRS investigation involved here, the facts indicate that the transactions although separate, have some relationship to one another. McKenna opines that Cohan bought a package of three interrelated tax shelters. All three tax shelters (Midco, Stockton Street, and Foghorn) were promoted, funded, and closed as a package deal to provide Cohan shelter at both the corporate and individual level. This package was referred to by his attorney as a "turn-key deal." The Stockton Street and Foghorn transactions served to avoid recognition of deferred intercompany gain and asset sale capital gains on the corporate returns and inflate Cohan's stock basis, avoiding recognition of gains resulting from the reported Midco transaction on his individual return. McKenna Decl. ¶ 10.[3] Avram Salkin's declaration, submitted by Cohan, does not refute the fact that the transactions were related in some way. He merely concludes that the transactions are differentiated from one another, but he acknowledges they all concern the sale of Sonic. Salkin Decl. ¶¶ 3-5.

Upholding the privilege here would deny the government access to vital facts. As the *Amlani* court noted, "where a party raises a claim which in fairness requires disclosure of the protected communication, the [attorney-client] privilege may be implicitly waived." *Id.* (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). To refute Cohan's contention that he relied on his counsel's advice with regards to transactions designed to avoid recognition of gains from the sale of Sonic, the government must have access to communications that describe counsel's advice with regards to all of the underlying transactions the IRS is examining in this particular investigation. *See id.* ("Amlani cannot assert that certain factors caused him to discharge his attorney and then

---

[3] Gray's IRS interview transcript also provides support for a conclusion that the transactions are related. Gray refers to all of the various transactions in the 1997-1998 time period as "the transaction". *See* Gray Tr. at 8-9. He notes that various companies developed parallel proposals for the transactions in 1997, noting that one such proposal was "all inclusive" and for "the whole transaction, from beginning to end." *Id.* at 28, 85, 87-88, 150. He also notes that the different transactions were difficult to distinguish. *Id.* at 133:17-20.

invoke the attorney-client privilege to prevent the government from examining the situation further. We have made it clear that 'the privilege which protects attorney-client communications may not be used both as a sword and a shield.'") (citations omitted). In addition, there are really no alternative sources of evidence to evaluate Cohan's advice-of-counsel defense. *See id.*

Cohan relies on *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) to argue that even if the three transactions are interrelated, waiver of the privilege on two of the transactions does not amount to a waiver of the privilege on the remaining transaction, because such waiver is to be narrowly construed. In *Bittaker*, an inmate was convicted of multiple murders and was sentenced to death. He filed a federal habeas petition raising a variety of ineffective assistance of counsel claims. The district court entered a protective order precluding the use of attorney-client privileged materials for any other purpose than litigating the habeas corpus petition. The Ninth Circuit affirmed, adopting a narrow waiver rule, holding that the scope of the inmate's waiver extended only to the federal habeas petition, and that the privilege was not waived for all time and all purposes. *Id.* at 722. This case does not support Cohan: the issue in *Bittaker* was whether waiver was effective beyond the instant proceeding. In accordance with *Bittaker*, Cohan's privilege is not waived for subsequent or different IRS investigations or prosecutions. It is, however, waived for the IRS proceeding in which he has asserted the advice-of-counsel defense.

        4.      Binder 116 Documents

The government also requests documents from Binder 116, which came into Cohan's possession after the original summonses were served. To the extent that Cohan withholds these documents on the basis of privilege, these documents must be produced for the reasons described above. Cohan also claims that certain documents in the binder relate to Fortrend International ("Fortrend") and are not responsive to the government's subpoenas.

The subpoenas, however, expressly request documents from Gray's files. The documents are bates-stamped "MG", indicating that they were in Gray's files, and are

therefore responsive to the subpoena.  The subpoenas also request documents showing communications exchanged after January 1, 1997 between certain persons (including Gray and Cohan) concerning the sale of Sonic stock, engagement of Presidio Advisory LLC, etc. *See id.* at 3.  It also requested documents concerning Cohan's tax strategy.  Fortrend and Presidio submitted competing proposals to Cohan regarding the Midco transaction being investigated by the IRS.  See Gray Tr. at 10, 28.  These documents, therefore, are responsive to the government's subpoena, and Cohan shall produce them.

**CONCLUSION**

Case No. 05-3792

In accordance with the foregoing, the government's motion is GRANTED.  Cohan shall produce the 93 documents identified in the privilege log, as well as the documents in Binder 116 within 10 days of this order.  The court file shall be closed.

Case No. 05-3791

It is further ordered that the parties in related case number 05-3791 PJH shall submit a further joint status statement within 10 days of this order.

IT IS SO ORDERED.

Dated: June 26, 2007

                                           PHYLLIS J. HAMILTON
                                           United States District Judge